UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Mark Ballotti, individually and on behalf of all others similarly situated, | 3:22-cv-50408 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Beiersdorf, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Beiersdorf, Inc. ("Defendant") manufactures, labels, and sells suntan lotion described as "Pure & Simple" "With Nourishing Botanicals*" under the Coppertone brand ("Product").



2. Consumers value personal care products consisting of pure and simple ingredients, believing they are better for their bodies and the environment.[1]

3. Products described with these terms are growing twice the rate of traditional cosmetics, with studies showing consumers will pay higher prices for them.

4. According to Nielsen, whether personal care products contain ingredients that could be described as pure and simple is of high importance to half the public.

5. According to studies and consumer research, consumers understand pure and simple similarly, consistent with their dictionary definitions.

6. Pure is defined as not mixed or adulterated with any other substance or material.

7. While simple is defined as not complicated, it also means without additions or modifications.

8. Consumers viewing the labeling of "Pure & Simple" in green font, blue leaves next to "50," and reference to botanical ingredients, will expect the Product's ingredients are only and/or predominantly not mixed with other substances and materials and not significantly modified from their original state.

9. However, no less than seventeen of its twenty-four ingredients are neither pure nor simple, because they are made by mixing with other substances and materials and significantly modified from their original state.

10. Though its active ingredient of zinc oxide occurs in the mineral zincite, this version is not used commercially.

---

[1] Coast Southwest, The Innovation Blog, Purity – The Biggest Buzzword for Personal Care Product Ingredients in 2018; Cosmetics Business, Brenntag presents the Advanced Story edition of Clean, Pure and Simple, Nov. 1, 2018 (describing "primary market research that inspired [] 2018 Concept of Clean, Pure and Simple").

11.  Instead, the zinc oxide in the Product is made through synthetic means involving the high-temperature oxidation of metallic zinc or zinc ores.

12.  The result is an ingredient which is no longer pure or simple.

13.  Of the inactive ingredients, at least sixteen are made through mixing with other substances and materials and are heavily modified. or material.

**Inactive ingredients** water, C12-15 alkyl benzoate, isopropyl palmitate, butyloctyl salicylate, ethylhexyl isononanoate, cetyl PEG/PPG-10/1 dimethicone, propylene glycol, cyclopentasiloxane, bis-octyldodecyl dimer dilinoleate/propanediol copolymer, dimethicone, ethylhexyl methoxycrylene, polyester-27, tea (camellia sinensis) leaf extract*, giant kelp (macrocystis pyrifera) extract*, sacred lotus (nelumbo nucifera) extract*, triethoxycaprylysilane, beeswax, hydroxyacetophenone, PEG-12 dimethicone crosspolymer, tocopherol, 1,2-hexanediol, caprylyl glycol, sodium chloride

14.  Cyclopentasiloxane, dimethicone, PEG-12 dimethicone crosspolymer, and cetyl PEG/PPG-10/1 dimethicone are silicones, which are synthetic polymers.

15.  These silicone ingredients are created through intense processing and chemical reactions.

16.  Butyloctyl salicylate, C12-15 alkyl benzoate, isopropyl palmitate, ethylhexyl methoxycrylene and ethylhexyl isononanoate are synthetic esters.

17.  Synthetic esters are made from carboxylic acids and alcohols, through chemical processing.

3

18. This is either through esterification of fatty acids with polyhydric alcohols in the presence of acidic catalysts or transesterification.

19. Propylene glycol and caprylyl glycol are synthetic humectants which reduce water activity.

20. Propylene glycol is made by adding water to propylene oxide, which is derived from petroleum products.

21. Though caprylyl glycol is derived from caprylic acid, a saturated fatty from coconut oil, its commercial use requires hydrolysis, a chemical process which adds water resulting in additional hydrogen ions.

22. Polyester-27 and bis-octyldodecyl dimer dilinoleate/propanediol copolymer are synthetic polymers, derived from petroleum oil through chemical reactions.

23. Triethoxycaprylysilane is made through synthesizing 1-octene with triethoxysilane and a platinum catalyst or silation of alcohols with disilazane, followed by extraction with ethyl acetate.

24. Defendant makes other representations and omissions which are false and misleading.

25. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $9.99 for 6 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

26. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

27. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

28. Plaintiff is a citizen of Illinois.

29. Defendant is a Delaware corporation with a principal place of business in Connecticut.

30. Defendant is a citizen of Delaware and Connecticut.

31. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

32. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, from thousands of locations including grocery stores, big box stores, drug stores, convenience stores, club stores and online, across the States covered by Plaintiff's proposed classes.

33. Venue is in this District with assignment to the Western Division because a substantial part of the events or omissions giving rise to these claims occurred in Ogle and Lee County, including Plaintiff's purchase of the Product and awareness the representations were false and misleading.

Parties

34. Plaintiff Mark Ballotti is a citizen of Illinois.

35. Defendant Beiersdorf, Inc. is a Delaware corporation with a principal place of business in Stamford, Fairfield County, Connecticut.

36. Defendant is one of the largest sellers of personal care products in the world, known for its sunscreen brands.

37. Plaintiff read pure and simple, and botanicals, and saw the coloring and images on

the label.

38. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

39. Plaintiff believed and expected the Product's ingredients were only and/or predominantly pure and simple.

40. Plaintiff did not expect that at least seventeen of the twenty-four ingredients would be significantly altered from their original state.

41. Plaintiff purchased the Product at locations including Walmart, 1640 S Galena Ave, Dixon, IL 61021, between March 2022 and May 2022, among other times.

42. Plaintiff bought the Product at or exceeding the above-referenced price.

43. Plaintiff paid more for the Product than he would have had he known it was not only or predominantly made from pure and simple ingredients or would not have purchased it.

44. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

45. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes and/or components.

46. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

47. Plaintiff is unable to rely on the labeling and representations not only of this Product,

but other similar personal care products represented as pure and simple, because he is unsure whether those representations are truthful.

## Class Allegations

48. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Wyoming, Montana, Idaho, Kansas, Kentucky, West Virginia, Iowa, Utah, and Alaska who purchased the Product during the statutes of limitations for each cause of action alleged.

49. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

50. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

51. Plaintiff is an adequate representative because his interests do not conflict with other members.

52. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

53. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

54. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

55. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, *et seq.*

56. Plaintiff incorporates by reference all preceding paragraphs.

57. Plaintiff believed the Product's ingredients were only and/or predominantly pure and simple, and that they would not be significantly altered from their original state.

58. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

59. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

60. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

61. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that its ingredients were only and/or predominantly pure and simple, and that they would not be significantly altered from their original state.

62. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

63. Defendant knew the product attributes that potential customers like Plaintiff were

seeking and developed its marketing and labeling to directly meet those needs and desires.

64. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that its ingredients were only and/or predominantly pure and simple, and that they would not be significantly altered from their original state.

65. Defendant's representations affirmed and promised the Product consisted of ingredients that were only and/or predominantly pure and simple, and that they would not be significantly altered from their original state.

66. Defendant described the Product so Plaintiff believed it consisted of ingredients that were only and/or predominantly pure and simple, and that they would not be significantly altered from their original state, which became part of the basis of the bargain that it would conform to its affirmations and promises.

67. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

68. This duty is based on Defendant's outsized role in the market for this type of Product, custodian of the leading Coppertone brand of sunscreen.

69. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

70. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

71. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

72. The Product did not conform to its affirmations of fact and promises due to

9

Defendant's actions.

73. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it consisted of ingredients that were only and/or predominantly pure and simple, and that they would not be significantly altered from their original state,

74. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it consisted of ingredients that were only and/or predominantly pure and simple, and that they would not be significantly altered from their original state, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

<u>Negligent Misrepresentation</u>

75. Defendant had a duty to truthfully represent the Product, which it breached.

76. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, an industry leader in sunscreen products with the best-selling Coppertone brand.

77. These representations and omissions went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first that it has been known for.

78. These promises were outside of the standard representations that other companies may make in a standard arms-length, context where products are sold through retailers.

79. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

80. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

### Fraud

81. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it consisted of ingredients that were only and/or predominantly pure and simple, and that they would not be significantly altered from their original state.

82. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

### Unjust Enrichment

83. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Injunctive relief to remove, correct and/or refrain from the challenged practices;
3. Awarding monetary, statutory and/or punitive damages and interest;
4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

Dated: November 27, 2022

Respectfully submitted,

11

                                                      /s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com